No. 23,814.

CHAMPION D. KIRCHER, *Appellant*, v. NANCY J. KIRCHER et al., *Appellees.*

#### SYLLABUS BY THE COURT.

1. VACATION OF DEFAULT JUDGMENT—*Grounds Therefor.* A judgment taken by default and obtained without fraud or fault of the plaintiff cannot be vacated on the ground of unavoidable casualty or misfortune where the failure to defend occurred through the inattention and negligence of the defendant.

2. SAME—*Mental Capacity of Defendant—Question of Fact.* Whether or not the defendant against whom the judgment was rendered was mentally competent and had the capacity to understand the nature of the action or the necessity for making a defense, was a question for the trier of the facts, and there being evidence to support the decision of the trial court, its judgment is conclusive.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed June 10, 1922. Affirmed.

*R. P. Evans,* and *George Clammer,* both of Manhattan, for the appellant.
*W. F. Challis,* of Wamego, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to annul and set aside a judgment obtained against Champion D. Kircher by his mother, Priscilla Kircher, rendered on April 4, 1918. The judgment determined that a deed which had been executed by the mother to the son on December 12, 1904, was null and void, and it was decreed that it be discharged of record.

In that action Priscilla Kircher alleged that she had been induced to execute the deed through the importunity and misrepresentations of her son, who was living with her and to whom she had entrusted the management of her business affairs. She alleged that she was

then in feeble condition physically and mentally, that he took advantage of her enfeebled condition and her trust in him and urged her to make the conveyance of the land to him, telling her that it was encumbered with a mortgage when it was unencumbered and that she would lose the same through the pretended mortgage unless she would convey the property to him. He also threatened to institute insanity proceedings against her unless the property was conveyed. She further alleged that he employed one P. C. Helder to prepare the deed and represented to her that Helder was a minister of the Gospel and a justice of the peace, and that, taking advantage of her religious nature and confidence in ministers, told her that Helder would not permit her to sign a deed unless it was just and right that she should do so. Helder, she alleged, was not a minister nor a justice of the peace, and all of the representations made were untrue and were made to quiet her apprehensions, and by reason of these she was fraudulently induced to sign the instrument. She further alleged that she did not have knowledge or mental capacity to comprehend the nature of the instrument or to understand its terms; that a part of the inducement to sign the deed was that he promised to make a home for her and would pay her the income of the property, but he had failed to provide her with a home, except for the short period of ten months, and that he has never paid her any part of the income except $100. She asked to have the deed set aside, that she recover the reasonable annual rental of the property, which is $480, and that the plaintiff and his wife be ejected from the premises.

That action was pending from August 23, 1915, until about April, 1918. In the instant case the testimony offered to set aside the judgment is based largely on the ground that Champion D. Kircher was of unsound mind and unable to make a defense in the former action in which the deed was set aside. His wife, who was joined with him as a defendant, had been adjudged insane and was confined in the state hospital. His mother, who brought the original action in which the judgment sought to be set aside was obtained, became insane before the judgment was rendered and has since died. The judgment in favor of the guardian of the mother was rendered by default as against Champion D. Kircher, but his wife was represented by her guardian. The judgment recites that the plaintiff introduced her evidence in support of her allegations of misrepresentation and fraud and that the defendants introduced no

evidence, although the guardian *ad litem* of Mrs. Champion D. Kircher was in court, and the court found the allegations of plaintiff's petition to be true and entered a decree setting aside the deed and restoring the title to the plaintiff.

It appears that Champion D. Kircher employed attorneys to represent him when the action was brought, but they had withdrawn from the case a year prior to the entry of judgment. In the latter part of the year 1915 there were negotiations between the parties looking to a settlement of the original controversy, but it was never consummated. In behalf of Champion D. Kircher, it is said that after the original action was begun, his wife sued him for divorce and, upon a charge that the children were neglected, they were taken from both parents and committed to another. This was followed by a proceeding in which his wife was adjudged insane, and it was claimed that all these circumstances affected his mentality and rendered him unfit to understand the action brought against him or the necessity for a defense. The evidence as to his competency shows him to have been a preacher, and a peculiar and eccentric man. The probate judge and sheriff stated that they hardly thought he was normal. One of his attorneys testified that they had great difficulty in making him understand the nature of the action and that there was incoherence and inconsistency in the statements he made to them. Some of his witnesses said that he was abnormal only on the topics of religion and women, while others said they thought there was a real unsoundness of mind.

The question presented to the trial court was whether the plaintiff, against whom the judgment was rendered, had shown that he was prevented from making his defense by unavoidable casualty or misfortune. It was mainly a question for the trier of the facts and it has been determined against the plaintiff. There was much testimony produced tending to show the abnormality of plaintiff and a lack of appreciation of the importance of the litigation with his mother. He did employ attorneys, who had difficulty in making him understand the nature of the case and the possible result of it. They represented him for about two years while the case was pending and presented a number of motions in it, but finally withdrew from the case after giving him ample notice of the withdrawal, and advising him that it was essentially necessary that he should employ others. This he neglected to do, although the action was not tried

nor judgment rendered until about a year after his counsel had severed their connection with the case. There was no haste, no fraud of the adverse party, nor anything which contributed to the failure of plaintiff to prepare and make his defense. His failure to appear and defend was his own careless inattention and gross negligence, which cannot be regarded as unavoidable casualty or misfortune, or grounds for a vacation of a judgment. He was negligent, not only before but after judgment, as he made no attack upon it until the present action was brought, and that was more than fifteen months after the judgment was rendered. In the recent case of *Gooden v. Lewis*, 101 Kan. 482, 167 Pac. 1133, it was said:

"The rule is settled that a litigant can not invoke the code provision for relief on the ground of 'unavoidable casualty or misfortune preventing a defense' where he has been manifestly negligent, guilty of laches, lacking in diligence, careless, hurried, or mistaken in the preparation of his defense, nor on account of the negligence of his attorney." (p. 487.)

The ground upon which counsel for plaintiff mainly relies for the vacation of the judgment is the incompetency of plaintiff and his lack of appreciation of the course of litigation. It was shown that he is peculiar and eccentric, and it is true that a number of distracting and distressing circumstances occurred in his life while the litigation was pending. Some witnesses regarded him to be of unsound mind, while others thought him to be sane but erratic. His mental condition was peculiarly a question for the trial court, which had much better opportunity than this court of determining his sense of responsibility and competency to make a defense. It has determined that these afforded no excuse for his negligence and no ground for the vacation of the judgment.

Within the rule which governs us in the review of a decision of a trial court on a question of fact, its judgment must be affirmed.